IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-368-BO

TRIALCARD INCORPORATED and TC )
HOLDINGS, LLC, )
          Plaintiffs, )
)
v. )     O R D E R
)
TRAVELERS CASUALTY AND SURETY )
COMPANY OF AMERICA, )
          Defendant. )

This cause comes before the Court on defendant's motion to dismiss plaintiffs' complaint in its entirety. Plaintiffs have responded, defendant has replied, and a hearing on the motion was held before the undersigned on February 13, 2020, at Raleigh, North Carolina. For the reasons that follow, defendant's motion to dismiss is granted.

BACKGROUND

Plaintiffs filed this action seeking to obtain a declaratory judgment laying out their rights under a directors and officers (D&O) liability policy sold by defendant to plaintiffs. Plaintiffs also seek to recover damages suffered as a result of defendant's wrongful refusal to defend and indemnify plaintiffs under the D&O policy.

The policy at issue, Travelers Policy No. 019-LB-106221132 (D&O Policy or Policy), includes D&O liability coverage and was issued to TrialCard Incorporated's corporate parent TC Holdings, for the policy period beginning December 31, 2015, to December 31, 2016. A covered claim under the D&O Policy includes "a civil proceeding commenced by service of a complaint or similar pleading against . . . an Insured for a Wrongful Act." *See* [DE 1] Compl. ¶ 9. A "Wrongful Act" is defined by the Policy to include "any actual or alleged act, error, omission, misstatement or breach of duty or neglect by, or any matter asserted against, the

Insured Organization." *Id.* ¶ 12. It is undisputed that plaintiffs (TrialCard) are the insured under the D&O Policy.

TrialCard was hired by pharmaceutical company Mayne Pharma to design, produce, and implement a launch campaign for Mayne Pharma's generic version of the drug Tikosyn. The marketing campaign included a promotional offering for Mayne Pharma's new drug, called Dofetilide, which included a $0 co-pay card to offset patients' out of pocket costs for the drug. The $0 co-pay program included a fax advertisement to alert pharmacies to the existence of the Dofetilide $0 co-pay program. TrialCard retained an outside vendor to deliver the fax advertisements.

In June 2016, a putative class action lawsuit was filed by Glen Ellyn Pharmacy in the United States District Court for the Northern District of Illinois. The suit named Mayne Pharma and John Does 1-10 as defendants and alleged claims under, *inter alia*, the Telephone Consumer Protection Act. 47 U.S.C. § 227. The conduct complained of in the complaint concerned Mayne Pharma's use of unsolicited fax advertisements in connection with its $0 co-pay program for Dofetilide. [DE 1-3]. Mayne Pharma gave TrialCard notice of the *Glen Ellyn* suit and demanded indemnification. TrialCard denied any obligation to indemnify Mayne Pharma, and requested indemnification from Mayne Pharma for any losses arising out of the *Glen Ellyn* suit.

TrialCard also notified defendant (Travelers) of the *Glen Ellyn* suit, and by letter dated September 16, 2016, Travelers denied any obligation to indemnify or defend TrialCard under the D&O Policy. [DE 1-2]. In March 2019, a settlement agreement was reached in the *Glen Ellyn* suit. The settlement agreement names Glen Ellyn and Mayne Pharma as the parties to the agreement. [DE 1-10]. TrialCard was expressly named as a released party under the agreement, and the released parties were included in the settlement agreement, not as parties to the

agreement, but as "intended third-party beneficiaries." The released claims included, without limitation, any claims by Glen Ellyn or any settlement class member against TrialCard arising out of or related in any way to the receipt of the Dofetilide $0 co-pay program advertisements by fax. TrialCard contributed a meaningful amount of money to the settlement fund that was to be distributed to class members. TrialCard also incurred other costs, including attorney fees. The settlement agreement was approved by the Northern District of Illinois on August 14, 2019. [DE 1-11].

## DISCUSSION

TrialCard has alleged three claims for relief: count one seeks a declaratory judgment that Travelers had a duty to defend and indemnify TrialCard in response to the *Glen Ellyn* suit, count two alleges that Travelers breached the policy by denying coverage for the *Glen Ellyn* suit, and count three alleges a claim for breach of the implied duty of good faith and fair dealing. Travelers moved to dismiss each claim for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint

must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

The parties agree that North Carolina law applies to TrialCard's claims. In North Carolina, insurance policy provisions that extend coverage are to be liberally construed, while policy provisions that exclude coverage are to be strictly construed. *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 9-10 (2010). The duty to defend against an action is broader than an insurer's duty to pay damages. *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691 (1986). In determining whether an insurer has a duty to defend in an action against the insured, a court compares the policy and the pleadings in the underlying action side-by-side, and any doubts must be "resolved in favor of the insured." *Id.* If there is no duty to defend, there is no duty to indemnify. *Liberty Corp. Capital, Ltd. v. Delta Pi Chapter of Lambda Chi Alpha*, No. 1:09cv765, 2012 U.S. Dist. LEXIS 113172, at *9 (M.D.N.C. Aug. 13, 2012). However, if the insurer's refusal to defend is determined to be unjustified, the insurer is obligated "to pay the amount and costs of a reasonable settlement." *Erie Ins. Exch. v. Builders Mut. Ins. Co.*, 227 N.C. App. 238, 251 (2013) (quoting *Duke University v. St. Paul Fire and Marine Ins. Co.*, 96 N.C. App. 635, 637 (1990)).

After conducting a side-by-side comparison of the Policy and the complaint in the *Glen Ellyn* suit, the Court determines that Travelers had no duty to defend TrialCard under the D&O Policy.

First, the D&O Policy extends coverage to claims against insureds for wrongful acts. As is relevant here,[1] a claim is defined by the policy as (1) a civil proceeding commenced by service

---

[1] Remaining policy definitions of a claim include a criminal proceeding commenced by the filing of charges, a security holder derivative demand, and a formal administrative or regulatory proceeding commenced by the filing of charges. D&O Policy § III.A3,5,6.

4

of a complaint or similar pleading; (2) a written demand for monetary damages or non-monetary relief; (3) an arbitration, mediation or similar alternative dispute resolution proceeding if the insured is obligated to participate or, if the insured agrees to participate, Travelers consents in writing, with such consent not to be reasonably withheld or (4) the service of a subpoena on an insured person identified by name, if served upon such a person pursuant to a formal administrative or regulatory proceeding. [DE 1-1] Private Company Directors and Officer's Liability Policy (D&O Policy) § III.A1,2,5,7.

The complaint alleges only that coverage was owed because the *Glen Ellyn* suit was a civil proceeding commenced by service of a complaint or similar pleading against TrialCard for a wrongful act. [DE 1] Compl. ¶ 9. The *Glen Ellyn* suit complaint did not name TrialCard as a defendant nor has TrialCard alleged that it was served with the complaint or similar pleading. The *Glen Ellyn* complaint named as defendants Mayne Pharma and John Does, which the complaint described as other persons or entities involved in sending the fax advertisements but whose identities Glen Ellyn did not know. Although Glen Ellyn later came to know the identity of TrialCard, the complaint was never amended to add TrialCard as a defendant.

TrialCard contends that the inclusion of John Doe defendants, of which TrialCard contends it was one, is sufficient to satisfy the D&O Policy's definition of a claim. The Court disagrees. John Doe defendants are disfavored in federal courts as judgment cannot be executed against an unnamed defendant. *See Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 367-68 (7th Cir. 1990); *Paulinus Chidi Njoku v. Unknown Special Unit Staff*, No. 99-7644, 2000 U.S. App. LEXIS 15695, at *2 (4th Cir. July 7, 2000). Where a suit has been initiated against a Doe defendant, a claim has not been initiated against a specific party until the complaint is amended to identify the Doe defendant. *Harbor Ins.*, 922 F.2d at 367-68. Moreover, even if TrialCard

5

could be considered a Doe defendant, TrialCard does not allege that it was ever served with the *Glen Ellyn* complaint or other similar pleading as is required by the Policy.

Although TrialCard alleges it received a subpoena *duces tecum* during discovery in the *Glen Ellyn* suit, a subpoena is not a complaint or similar pleading. *See* Fed. R. Civ. P. 7. The D&O Policy does define a claim to include a subpoena issued to an insured person, but only where it is issued in connection with a formal administrative or regulatory proceeding, which the *Glen Ellyn* suit was not. TrialCard is also an insured organization under the Policy, not an insured person, which is defined by the Policy as a natural person. *See* D&O Policy § III.E.

Nor was TrialCard's participation in the *Glen Ellyn* settlement discussions a claim pursuant to the Policy's definition concerning mediation or alternative dispute resolution proceedings. TrialCard has not alleged that it was obligated to participate in the *Glen Ellyn* mediation, nor are there allegations to support that TrialCard sought Travelers' consent to participate in the settlement discussions and consent was either given or unreasonably withheld. The letters attached to the complaint do not show that TrialCard requested consent from Travelers' to participate in settlement negotiations. *See. e.g.*, [DE 1-4].

TrialCard does allege that it received a written demand for monetary damages or non-monetary relief from Mayne Pharma when Mayne Pharma demanded indemnification. As Travelers argues, this was a claim for liability of TrialCard, the insured organization, but such claim was expressly barred by the Policy's contractual liability exclusion. This exclusion bars coverage for any claim of liability against the insured organization made under any express contract or agreement. *See* D&O Policy § IV.A.13. As alleged in TrialCard's complaint, Mayne Pharma's demand for indemnification was made pursuant to the master services agreement between TrialCard and Mayne Pharma. [DE 1] Compl. ¶ 16. TrialCard does not allege that it

6

received a written demand for monetary or non-monetary relief from Glen Ellyn arising from the *Glen Ellyn* suit.

Finally, coverage would be barred pursuant the Policy's Errors & Omissions Exclusion, which excludes coverage for wrongful acts in the rendering of professional services for others by the insured. D&O Policy, Addition of Errors and Omissions Exclusion with Securities Claim Carveback Endorsement ¶ 2. A professional service "is generally defined as one arising out of a vocation or occupation involving specialized knowledge or skills, and the skills are mental as opposed to manual." *Duke Univ.*, 96 N.C. App. at 639. TrialCard alleges that the services at issue in the *Glen Ellyn* suit – sending a fax – were not professional. However, if sending a fax was the only service for which liability would result under Glen Ellyn's allegations, TrialCard, which hired a third-party to send the $0 co-pay program faxes, would not be implicated in Glen Ellyn's suit. Clearly, to the extent that TrialCard was implicated by the *Glen Ellyn* complaint, it was for the professional services it provided to Mayne Pharma in designing and marketing the $0 co-pay program.

Construing the allegations in the complaint as true, and affording the policy terms at issue broad construction in favor of coverage, TrialCard has failed to plausibly allege that Travelers breached the D&O Policy and improperly denied coverage as alleged in counts one and two of the complaint. Accordingly, TrialCard has also failed to state a claim for breach of the implied covenant of good faith and fair dealing, which, as it argues, it has not alleged as a claim for extra-contractual damages under a tort theory, but rather as part and parcel of its breach of contract claim. [DE 12 at 16]. Even to the extent that TrialCard had alleged its good faith and fair dealing claim under a tort theory, such claim would fail as the complaint fails to allege any bad faith on the part of Travelers. *See Cleveland Constr., Inc. v. Fireman's Fund Ins. Co.*,

7

819 F. Supp. 2d 477, 483 (W.D.N.C. 2011); *Lovell v. Nationwide Mut. Ins. Co.*, 108 N.C. App. 416, 420 (1993).

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss [DE 10] is GRANTED. Plaintiffs' complaint is DISMISSED in its entirety. The clerk is DIRECTED to enter judgment and close the file.

SO ORDERED, this __/__ day of April, 2020.

*Terrence W. Boyle*
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE